# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __**November 26, 2014**__

**NO. 33,192**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**KEVIN SHEEHAN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT LINCOLN COUNTY**
**James Waylon Counts, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellant

John R. Hakanson, P.C.
Miguel Garcia
Alamogordo, NM

for Appellee

**OPINION**

**FRY, Judge.**

{1} The State appeals the district court's order granting Defendant's motion to suppress evidence gathered during Defendant's arrest for driving while intoxicated. Officer Cory Crayton detained Defendant after observing what he believed to be an unconscious female passenger in Defendant's vehicle, which was parked on the side of the road. The district court concluded that Officer Crayton did not have reasonable suspicion to perform an investigatory detention and that the community caretaker exception to the Fourth Amendment did not apply to Officer Crayton's actions. Because we conclude that the district court applied the wrong standard in analyzing Officer Crayton's actions, we reverse.

**BACKGROUND**

{2} The following facts are taken from Officer Crayton's testimony at the suppression hearing. Officer Crayton was patrolling state highway 48 in Lincoln County when he noticed a Jeep parked on the shoulder of the road. It was just after midnight. The driver's side door was open and the interior light was on. Inside the Jeep were two people; Defendant was in the driver's seat, and a woman was in the passenger seat. Officer Crayton testified that the woman was crouched to the side with her head tilted completely back, such that he could "see her esophagus." He

stated that it did not look like a position one would choose to sleep in. Officer Crayton testified that Defendant was "leaning" over her.

{3} Believing that something might be wrong, Officer Crayton stopped beside the Jeep and asked whether they were okay. Defendant responded that they were and then, according to Officer Crayton, he anxiously began attempting to leave. At this point, Officer Crayton backed up, activated his lights, and pulled in behind the vehicle. He testified that he did not see any indication that something violent or criminal had taken place between Defendant and the female passenger. Instead, he was concerned for the woman because, although she may have been sleeping, she did not look like she was in a sleeping position, and he believed that she may have been unconscious. Officer Crayton testified that at that point, he intended to detain the vehicle in order to ensure the female passenger's safety.

{4} Officer Crayton approached the vehicle on the passenger side. At that point, the woman "came to" and said something to Officer Crayton. Officer Crayton testified that his concern for the female passenger was alleviated by her speaking. He testified, however, that he smelled an odor of alcohol coming from the Jeep. He therefore asked Defendant to exit the Jeep. As Officer Crayton spoke to Defendant, he smelled alcohol on Defendant's breath. Officer Crayton asked Defendant to

2

perform a field sobriety test.  Defendant was subsequently arrested and charged with driving while intoxicated.

{5}     Defendant filed a motion to suppress, arguing that he was unconstitutionally seized the moment Officer Crayton turned on his emergency lights and pulled behind Defendant's car.  The district court agreed with Defendant and concluded that there was no evidence that there was an emergency requiring the assistance of Officer Crayton nor was there reasonable suspicion that criminal activity was underway.  Accordingly, the district court suppressed any evidence obtained by Officer Crayton after the stop.  The State now appeals.

**DISCUSSION**

{6}     The State argues that the district court relied on the wrong standard in granting Defendant's motion to suppress because it relied on the higher standard of the community caretaker exception that applies to warrantless entries into residences.  We agree with the State that the district court applied the wrong test in determining that the stop violated Defendant's constitutional rights.

**Standard of Review**

{7}     On appeal from a district court's ruling on a motion to suppress, we review findings of fact to determine if they are supported by substantial evidence and we review legal conclusions de novo.  *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M.

159, 935 P.2d 1171. In determining whether the law was correctly applied to the facts, we view the facts in the light most favorable to the prevailing party. *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. However, because the facts are largely undisputed in this case, we review only the legal conclusions of the district court in granting Defendant's motion to suppress. *State v. Morales*, 2005-NMCA-027, ¶ 8, 137 N.M. 73, 107 P.3d 513.

**Officer Crayton Validly Stopped Defendant Pursuant to the Community Caretaker Exception**

{8}    There is no dispute that the initial encounter between Defendant and Officer Crayton was appropriate. As stated above, however, the district court concluded that a seizure occurred once Officer Crayton activated his lights and pulled behind Defendant. The district court concluded that Officer Crayton did not have reasonable suspicion for such a stop. In turning to the community caretaker exception, the district court stated that the standard for analyzing this encounter was whether there were "reasonable grounds to believe that there is an emergency at hand and an immediate need for [police officer] assistance for the protection of life or property." The district court noted that despite repeated opportunities to do so, Officer Crayton never testified that he thought there was an emergency. The district court therefore concluded that the community caretaker exception did not apply.

4

{9} We agree with the district court that Officer Crayton did not have the requisite reasonable suspicion to undertake an investigative detention of Defendant when he first activated his lights and pulled in behind him. *State v. Walters*, 1997-NMCA-013, ¶ 10, 123 N.M. 88, 934 P.2d 282 (stating that investigatory stops, which constitute a seizure for Fourth Amendment purposes, require reasonable suspicion). The issue then is whether Officer Crayton was acting pursuant to his role as a community caretaker when he detained Defendant. *Id.* (recognizing that "in some circumstances, without reasonable suspicion of criminal activity, police may intrude upon an individual's privacy to carry out community caretaker functions that further public safety"). "An officer who is acting as a community caretaker does not violate the Fourth Amendment." *Schuster v. State Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 26, 283 P.3d 288. Therefore, "[w]hen police act as community caretakers, . . . the existence of reasonable suspicion or grounds for probable cause are not appropriate inquiries." *State v. Ryon*, 2005-NMSC-005, ¶ 20, 137 N.M. 174, 108 P.3d 1032. "When determining whether a warrantless search or seizure is reasonable on the basis of the community caretaker exception, we must measure the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id.* ¶ 24 (internal quotation marks and citations omitted).

5

**{10}**     Due to differing expectations of privacy, however, not all actions by police that invoke the community caretaking exception are analyzed under the same standard. *Id.* ¶ 25. In this case, the district court stated that the standard was whether there were "reasonable grounds to believe that there is an emergency at hand." This language comes from the first element of the "emergency aid doctrine." *Id.* ¶¶ 25, 29 ("First, the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property." (alteration, internal quotation marks, and citation omitted)). The emergency aid doctrine is only one of three distinct doctrines within the broadly-termed "community caretaker exception," the other two being the automobile impoundment and inventory doctrine, and the redundantly-titled community caretaking doctrine, also known as the public servant doctrine. *Id.* ¶ 25. To avoid confusion, we will refer to the third doctrine as the public servant doctrine. While these doctrines share the "common characteristic" of applying to situations in which the police officer's actions "are motivated by a desire to aid victims rather than investigate criminals," because each doctrine involves separate types of intrusions involving distinct expectations of privacy, the doctrines are analyzed by different standards. *Id.* (internal quotation marks and citations omitted).

6

{11} The emergency aid doctrine "applies specifically to warrantless intrusions into the home."[1] *Ryon*, 2005-NMSC-005, ¶ 31. Our Supreme Court has stated that the inquiry under the emergency aid doctrine is "unique" because "a search within a home raises unique concerns." *Id.* ¶ 22. "[I]ntrusion into the privacy and sanctity of the home must be guarded with careful vigilance and permitted only in carefully thought-through and clearly justifiable circumstances." *Id.* ¶ 19 (internal quotation marks and citation omitted). Therefore, the burden for justifying a warrantless entry into a private residence under the emergency aid doctrine is significantly higher than the standards under the other community caretaker doctrines. *Id.* ¶ 26 ("Since the privacy expectation is strongest in the home only a genuine emergency will justify entering and searching a home without a warrant and without consent or knowledge."); *see State v. Baca*, 2007-NMCA-016, ¶ 31, 141 N.M. 65, 150 P.3d 1015 ("This standard is high because it reflects the bedrock constitutional principle that a

---

[1]We recognize that our Supreme Court made an earlier statement in *Ryon* that appears somewhat contradictory to this later statement. Our Supreme Court stated that "[t]he emergency doctrine applies to, but is not limited to, warrantless intrusions into personal residences." *Id.* ¶ 26 (internal quotation marks and citation omitted). We do not construe this statement as limiting our conclusion in this case because the Court immediately thereafter stated that the emergency assistance doctrine may justify more intrusive searches of the home or person than the lower standard of reasonableness that applies to an involuntary search or seizure of a "vehicle on a public highway." *Id.*; *Laney v. State*, 117 S.W.3d 854, 861 (Tx. Crim. App. 2003) (en banc) ("[T]he [public servant] doctrine deals primarily with warrantless searches and seizures of automobiles . . ., while the emergency doctrine deals with warrantless entries of, but is not limited to, private residences.").

warrantless entry into a home presents unique concerns."). The encounter in this case did not involve a warrantless entry into a home. Thus, because the district court applied the emergency aid doctrine to the encounter, it relied on the wrong standard in granting the motion to suppress.

{12} The proper standard to apply to the encounter in this case is the public servant doctrine. The "public servant doctrine deals primarily with warrantless searches and seizures of automobiles." *Ryon*, 2005-NMSC-005, ¶ 26 (internal quotation marks and citation omitted). Because "there is a lesser privacy expectation in a vehicle on a public highway, an involuntary search or seizure there is judged by a lower standard of reasonableness[ than the emergency assistance doctrine]." *Id.* Under the public servant doctrine, "a police officer may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring." *Apodaca v. State, Taxation & Revenue Dep't*, 1994-NMCA-120, ¶ 5, 118 N.M. 624, 884 P.2d 515; *see State v. Reynolds*, 1993-NMCA-162, ¶ 8, 117 N.M. 23, 868 P.2d 668 ("Part of the function of police officers is to carry out community caretaking functions to enhance public safety. It is appropriate, then, for police officers to stop vehicles for a specific, articulable safety concern."), *rev'd on other grounds*, 1995-NMSC-008, 119 N.M. 383, 890 P.2d 1315. This is an "objective test to determine whether a vehicle stop is based on a reasonable concern

8

for public safety." *Ryon*, 2005-NMSC-005, ¶ 30. "The scope of any intrusion following the stop must be limited to those actions necessary to carry out the purposes of the stop, unless . . . reasonable suspicion or probable cause arises." *Apodaca*, 1994-NMCA-120, ¶ 5.

{13} We conclude that Officer Crayton sufficiently articulated a specific concern for the safety of the female passenger to permit him to detain the vehicle to alleviate that concern. Officer Crayton repeatedly emphasized during his testimony that he detained the vehicle due to his concern for her safety. These safety concerns were rooted in his observation of the female passenger's position in the vehicle, specifically his observation that she appeared unconscious and in an unnatural position, did not respond to his inquiry or even give any indication that she registered the question, and that Defendant was "leaning over her." Because Officer Crayton's concern was for the passenger, it follows that his concerns for her would be alleviated by a response from her, not just from Defendant. The district court made no credibility determination regarding Officer Crayton's testimony indicating that the court found that Officer Crayton's motivation was something other than concern for the female passenger. Instead, the court concluded that Officer Crayton's concerns were not sufficient to meet the higher standard of the emergency assistance doctrine. Under the correct standard, however, Officer Crayton permissibly detained

Defendant's vehicle until he could ascertain whether assistance was needed. *See Schuster*, 2012-NMSC-025, ¶ 27 (stating that "a continued investigation by an officer in his or her role as a community caretaker is reasonable as long as the officer is motivated by a desire to offer assistance and not investigate").

{14}     Finally, we note our agreement with the Montana Supreme Court that once "the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating . . . the protections provided by the Fourth Amendment." *State v. Lovegren*, 2002 MT 153, ¶ 25, 310 Mont. 358, 51 P.3d 471. Here, Officer Crayton stated that once the female passenger roused herself, his concerns for her safety were alleviated but that he smelled alcohol coming from the vehicle. At this point, Officer Crayton was no longer acting in a community caretaker role, and the situation transitioned into a seizure under the Fourth Amendment. No argument was presented below or on appeal that this seizure violated the Fourth Amendment and accordingly we do not address it.

**CONCLUSION**

{15}     For the foregoing reasons, we reverse the district court's grant of Defendant's motion to suppress.

{16}    **IT IS SO ORDERED.**

_____
                    **CYNTHIA A. FRY, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**MICHAEL E. VIGIL, Judge**

11