This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                  **NO. 33,462**

**CRAIG YORK,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Todd B. Hotchkiss, Attorney at Law, LLC
Todd Hotchkiss
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

{1}     We consider in this appeal whether the public servant doctrine permitted the arresting officer to detain a vehicle without reasonable suspicion of the commission of a crime in order to investigate the circumstances of a woman walking alone on an unlit road at night while being observed by a man seated in a vehicle at a stop sign. We hold that the circumstances justified a reasonable safety concern on the part of the officer and that the subsequent seizure was supported by reasonable suspicion. We thus affirm.

**BACKGROUND**

{2}     Defendant Craig York was convicted in metropolitan court for DWI and an open container violation. He appealed to the district court, arguing that the arresting officer, Deputy Raymond Mackey, did not have reasonable suspicion to support his traffic stop that led to his DWI investigation. The district court affirmed, holding that Deputy Mackey was acting as a community caretaker based on a reasonable concern and did not violate the Fourth Amendment.

{3}     The district court acted on the following facts. Deputy Mackey was on duty at approximately 9:00 p.m. on June 6, 2009 when he observed a silver jeep at a stop sign. He also observed a woman walking along the road near the guardrail. The area was dark and not safe for walking; there was no shoulder. Deputy Mackey had never seen a pedestrian on this part of the road in more than a year patrolling the area. The

2

driver was watching the woman; he was not watching traffic and did not see Deputy Mackey.

{4}     Deputy Mackey slowed down as he approached the intersection, and the stopped vehicle moved forward and stopped again, a car-length beyond the stop line. Deputy Mackey believed the driver and the woman had a "domestic dispute" because he was "certain" the driver was "staring intently at her" and was "interested in her specifically and not the traffic." He was concerned that the woman was alone in a dark, secluded area and wanted "to make sure she was okay as a community service." He engaged his emergency lights and approached the vehicle after it entered the intersection. Then, as the woman walked back toward the vehicle, he asked her to stop and spoke with the driver. As he was doing so, he observed that the driver had an odor of alcohol, bloodshot eyes, and slurred speech. Another deputy performed a DWI investigation.

{5}     Deputy Mackey testified that he asked the driver his relationship with the woman, and the driver responded that "she was a friend" and that they "had an argument in the car, and she got out to walk home." The woman gave similar information.

{6}     During the trial in the metropolitan court, Defendant moved to suppress Deputy Mackey's testimony concerning post-stop events for lack of reasonable suspicion to

3

believe that Defendant had committed or was committing a crime. The metropolitan court denied the motion.

**RIGHT TO APPEAL**

{7}     As an initial matter, we address the State's argument raised in its answer brief that challenges this Court's jurisdiction to hear appeals from a district court's on-record review of a metropolitan court decision. As the State recognizes, this argument was rejected in *State v. Carroll*, 2015-NMCA-033, ¶ 5, 346 P.3d 372 ("[T]his Court has been vested with jurisdiction over appeals in all criminal actions with the limited exception of those where a sentence of death or life imprisonment is imposed. Had the Legislature intended to limit our jurisdiction to preclude review of the on-record appellate decisions of the district court, we assume it would have explicitly done so."), *cert. granted*, 2015-NMCERT-001, 350 P.3d 92, and we decline to revisit the *Carroll* holding. *See State v. Jones*, 2010-NMSC-012, ¶ 59, 148 N.M. 1, 229 P.3d 474 (noting that, in the absence of law to the contrary, a decision from the Court of Appeals is "controlling" even when certiorari has been granted by the Supreme Court).

**APPLICATION OF PUBLIC SERVANT DOCTRINE**

{8}     The issue before us is whether the district court properly determined that Deputy Mackey acted as a community caretaker in detaining Defendant. The parties

4

do not dispute that Deputy Mackey did not have reasonable suspicion to detain Defendant when he activated his emergency lights and approached Defendant's vehicle. Nor does the State dispute that Deputy Mackey detained Defendant when he took such action. Defendant does not dispute that Deputy Mackey had reasonable suspicion to detain Defendant after he observed Defendant's odor of alcohol, bloodshot eyes, and spurred speech. However, an officer who detains an individual while properly acting as a community caretaker does not implicate constitutional search and seizure provisions. *Schuster v. State Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 26, 283 P.3d 288.

{9}     When acting as a community caretaker, a law enforcement officer's actions may be excepted from search and seizure principles under three separate doctrines: the emergency aid doctrine, the automobile impoundment and inventory doctrine, and the community caretaker or public servant doctrine. *State v. Ryon*, 2005-NMSC-005, ¶ 25, 137 N.M. 174, 108 P.3d 1032; *State v. Sheehan*, 2015-NMCA-021, ¶ 10, 344 P.3d 1064. The third doctrine, which we will refer to as the public servant doctrine, applies to warrantless searches and seizures of automobiles and is at issue in this case. *Ryon*, 2005-NMSC-005, ¶ 26; *Sheehan*, 2015-NMCA-021, ¶ 12.

{10}     "When determining whether a warrantless search or seizure is reasonable on the basis of the community caretaker exception, [an appellate court] must measure the

public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Ryon*, 2005-NMSC-005, ¶ 24 (internal quotation marks and citation omitted). Because there is a lesser expectation of privacy in a vehicle on a public highway than there is for a personal residence, a vehicle stop under the public servant doctrine requires a lesser standard of reasonableness than a home intrusion under the emergency aid doctrine. *Id.* ¶ 26; *Sheehan*, 2015-NMCA-021, ¶ 12. When reviewing a ruling on a motion to suppress, we review findings of fact for substantial evidence and conclusions of law de novo. *Id.* ¶ 7. We "view the facts in the light most favorable to the prevailing party." *Id.*

{11}     This case is not unlike *Sheehan*, in which we recently addressed the public servant doctrine. In *Sheehan*, the arresting officer, while on patrol just after midnight, observed two people in a vehicle parked on the shoulder of a road. *Id.* ¶ 2. Although the officer "did not see any indication that something violent or criminal had taken place[,]" he was concerned because the woman in the passenger seat was "crouched to the side with her head tilted completely back," in a position in which "although she may have been sleeping, she did not look like she was in a sleeping position[.]" *Id.* ¶¶ 2-3 The officer thought that she was unconscious. *Id.* ¶ 3. The driver was leaning over her. *Id.* ¶ 2. The officer stopped next to the vehicle and inquired if "they were okay." *Id.* ¶ 3 The driver "responded that they were" and anxiously tried to leave. *Id.*

6

The officer then activated his emergency lights and pulled behind the vehicle. *Id.* When he approached the vehicle, the woman spoke to him. *Id.* ¶ 4. However, the officer smelled an odor of alcohol coming from the vehicle that he then smelled coming from the defendant, who, after performing a field sobriety test, was arrested. *Id.*

{12}    The officer in *Sheehan* "repeatedly emphasized during his testimony that he detained the vehicle due to his concern for [the woman's] safety." *Id.* ¶ 13. We held that the officer had "sufficiently articulated" his specific concern "to permit him to detain the vehicle to alleviate that concern." *Id.*

{13}    The test to determine whether the public servant doctrine creates an exception to constitutional search and seizure requirements is an objective one, based on reasonableness. We look to whether an officer has stopped a vehicle "based on a reasonable concern for public safety." *Ryon*, 2005-NMSC-005, ¶ 30. As in *Sheehan*, Deputy Mackey "sufficiently articulated" a reasonable concern for the public safety in detaining Defendant. 2015-NMCA-021, ¶ 13.

{14}    Deputy Mackey testified that the woman was walking alone on an unsafe road with no sidewalk or shoulder. It was dark. Defendant, while stopped at the intersection, was focused entirely on the woman, ignoring traffic and did not notice Deputy Mackey's vehicle next to him. Defendant moved into and stopped in Deputy

Mackey's lane of traffic. Deputy Mackey testified that, based on his observations of Defendant's demeanor in looking at the woman and the circumstances of the woman's walking on a dark, unsafe road, he concluded that "there was definitely a dispute between them to the point where she felt it necessary to walk away." He specifically testified that he investigated the situation based on his safety concerns.

{15}    From Deputy Mackey's testimony, the metropolitan and district court could reasonably conclude that Deputy Mackey took the action that he did based on his concern for those present, particularly the woman. It was reasonable for him to conclude, based on the darkness and the unsafe location, that the woman left the vehicle because of a domestic dispute. It was also reasonable for him to conclude, based on Defendant's demeanor, that there was potential for further domestic distress. Moreover, the woman's location on the road, even though she did not indicate that she needed assistance, was enough to reasonably invoke Deputy Mackey's safety concerns. The fact that Deputy Mackey's concerns were more focused on the woman rather than on Defendant, as Defendant argues, is not determinative. Although the woman was more clearly at risk, Defendant was present and an integral part of the circumstances giving rise to Deputy Mackey's concerns. It would have been neglectful for Deputy Mackey to have ignored Defendant's involvement. *See State v. Funderburg*, 2008-NMSC-026, ¶ 32, 144 N.M. 37, 183 P.3d 922 (stating that, in

"weighing the officer's intrusion on [the d]efendant's privacy, [an appellate court] should ask [itself] what other actions a reasonable officer would be expected to take under similar circumstances, if not those taken").

{16} We note Defendant's arguments concerning the lack of objective facts that there was a domestic dispute going on and that Deputy Mackey acted merely upon his surmise. Defendant demands a greater standard than required. As we have discussed, the standard is an objective one based on reasonableness. *Ryon*, 2005-NMSC-005, ¶ 30. Deputy Mackey was required to articulate objective facts that could lead the factfinder to conclude that Deputy Mackey had a reasonable safety concern. The metropolitan court, as factfinder, concluded that Deputy Mackey had a reasonable safety concern, as did the district court. Viewing the evidence in the light most favorable to the State as prevailing party, there was substantial evidence to support the metropolitan and district court's conclusions. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (recognizing that the appellate courts "view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings").

{17} Given that Deputy Mackey did not inappropriately detain Defendant, Deputy Mackey could then proceed to investigate based on his reasonable suspicion that Defendant had been drinking and driving.

**CONCLUSION**

**{18}**    We affirm the ruling of the district court.

**{19}**  **IT IS SO ORDERED.**

                                  _____

                                  **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**TIMOTHY L. GARCIA, Judge**