This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39770**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICHAEL SHAINE DIRICKSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     Defendant Michael Dirickson was convicted of possession of methamphetamine, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2021). Defendant argues on appeal: (1) his counsel was ineffective for failing to move to suppress evidence; and (2) the evidence presented was insufficient to support his conviction. We affirm.

## BACKGROUND

**{2}**     The following facts are based on evidence presented during Defendant's trial. On February 3, 2018, a clerk from a Giant gas station called the Alamogordo Police Department and reported that a man was slumped over in the driver's seat of a vehicle that had been parked in front of the station for multiple hours. Officer Phillip Villarreal responded to the call at approximately 4:00 a.m. in the morning. Upon arriving at the Giant gas station, Officer Villarreal parked his patrol car behind Defendant's vehicle, observed Defendant asleep, and slumped over in the driver's seat. He also noted that Defendant's dog was in the back passenger seat.

**{3}**     Officer Villarreal knocked on the driver's side window of the vehicle to awaken and make contact with Defendant. The interaction between Officer Villarreal and Defendant was recorded on the Officer's lapel camera. Upon waking Defendant, Officer Villarreal told Defendant to roll down his window and Defendant responded by opening his door. Officer Villarreal asked Defendant, "What's going on?" to which Defendant replied that he had been waiting for his brother. Officer Villarreal asked Defendant if he needed to be worried about any weapons. Defendant replied that he had a pistol, and pointed to the passenger floorboard of the vehicle. In order to ensure his safety, Officer Villarreal instructed Defendant to step out of the vehicle to separate him from the weapon. After Defendant stepped out of the vehicle, Officer Villarreal asked Defendant to confirm that he did not have the pistol on his person and then asked for identification, which Defendant produced.

**{4}**     At this point Officer Villarreal informed Defendant that the store clerk was concerned and had requested the police check on him to ensure that he was not intoxicated or otherwise in distress. Officer Villarreal then called in for a license check, which revealed two active arrest warrants. Defendant was placed in handcuffs and asked if he had anything on his person that the officer needed to be concerned about, such as knives or needles. Defendant replied, "I don't know."

**{5}**     Officer Villarreal then conducted a search of Defendant during which he discovered a pistol in the inner pocket of Defendant's jacket and a bag of a white, crystalized substance in the front, left pocket of Defendant's pants. Based on his experience, Officer Villarreal believed the substance in the bag to be methamphetamine. Officer Villarreal sought the opinion of another officer on scene, who had arrived to assist Officer Villarreal at some point during the encounter, and confirmed that the substance looked like methamphetamine. The second officer did not testify at trial. Defendant and the bag of suspected methamphetamine were transported to the police department where the substance was submitted to evidence pending later testing.

**{6}**     A forensic scientist with the New Mexico Department of Public Safety, testified that the substance tested positive for methamphetamine. The jury convicted Defendant of possession of methamphetamine. This appeal followed.

**DISCUSSION**

**{7}**     Defendant argues that Officer Villarreal was not acting as a community caretaker when interacting with him because he failed to ask about Defendant's well-being and continued a criminal investigation after he learned Defendant did not need assistance. Because of this, Defendant asserts Officer Villarreal impermissibly seized him when he parked his patrol car behind Defendant's car, woke him, and asked Defendant to get out of the vehicle without reasonable suspicion. Defendant therefore alleges that the evidence used to convict him was obtained unlawfully and should have been suppressed. Defendant makes these arguments under a claim of ineffective assistance of counsel, given his attorney did not file a motion to suppress evidence. We conclude Defendant has failed to establish a prima facie case of ineffective assistance of counsel.

**{8}**     As a preliminary matter, we briefly address the State's argument that because Defendant was represented by the Law Offices of the Public Defender during the course of the proceedings below and now on appeal, Defendant must first comply with this Court's order in *State v. Jones*, 1994-NMCA-045, 119 N.M. 53, 888 P.2d 935. In *Jones*, this Court ordered the appellate public defender for the Law Office of the Public Defender to file a waiver of conflict of interest by a defendant where the appellate public defender argues ineffective assistance of counsel on appeal where counsel below was also a public defender for the Law Office of the Public Defender. *Id.* The State gives no description of how a conflict exists here, other than to say that a public defender appeared in the case below. The State requested Defendant "file a waiver in this Court, make a showing as to why no conflict exists, or file a motion to have his counsel withdraw."

**{9}**     *Jones* applies when there is a facial conflict between the appellate public defender and the public defender below due to both attorneys working in the same office. *See id. Jones* does not stand for the principle that a defendant's argument should not be reached on appeal, but rather that the state may move to hold briefing in abeyance until the conflict is resolved. *See id.* Here, as defense counsel explains, the appellate public defender is now in a different department from trial counsel, eliminating a facial conflict. *See* NMSA 1978, § 31-15-8(A), (B) (2014) (stating the chief public defender shall establish an appellate division, and that the appellate division will "provid[e] representation before the [C]ourt of [A]ppeals and the [S]upreme [C]ourt in appellate, review and postconviction proceedings"); *cf. Morales v. Bridgforth*, 2004-NMSC-034, ¶ 1, 136 N.M. 511, 100 P.3d 668 (concluding "there is no per se conflict of interest where the Post Conviction Conflict Division of the Department represents an individual arguing a claim of ineffective assistance of counsel by an attorney from the Trial Division of the Department" of the public defender's office). As such, we decline to address the State's argument further.

I.     **Ineffective Assistance of Counsel**

**{10}**     "The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel." *State v. Mosely*, 2014-NMCA-094, ¶ 18, 335 P.3d 244. Defendant contends he had a viable suppression issue under Article II, Section 10 of the New Mexico Constitution and that his attorney's failure to move to suppress the

methamphetamine on the grounds that he "was seized without reasonable suspicion or pursuant to any exception," rendered his attorney's assistance ineffective. The State contends that the record establishes that the contact between Officer Villarreal and Defendant was a permissible community caretaker encounter and therefore a reasonably competent attorney could have decided that a motion to suppress was not warranted.

{11}  "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.

{12}  Because the record is frequently insufficient to establish whether an action taken by defense counsel was not reasonable or if an error caused prejudice, ineffective assistance of counsel claims are often better addressed in habeas corpus proceedings. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. However, if on direct appeal a defendant makes a prima facie case for ineffective assistance of counsel on the basis of facts in the record, an appellate court can remand to the district court for an evidentiary hearing. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. A defendant makes a prima facie case when the defendant produces sufficient evidence to allow the trier of fact "to infer the fact at issue and rule in [the d]efendant's favor." *Id.*

{13}  When an ineffective assistance of counsel claim is premised on counsel's failure to move to suppress evidence, a defendant "must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosley*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted). However, when "a plausible, rational strategy or tactic can explain the conduct of defense counsel, we cannot conclude that trial counsel erred." *Crocco*, 2014-NMSC-016, ¶ 15 (internal quotation marks and citation omitted). One reason why defense counsel may not have moved to suppress evidence is "counsel's judgment that the motion would be groundless and unsuccessful." *Id.*

{14}  In order to establish a successful motion to suppress, Defendant would have to show the existence of facts demonstrating that Officer Villarreal acted outside the permissible role of a community caretaker and that he lacked reasonable suspicion and seized Defendant. The record before us on appeal suggests that a reasonably competent attorney could have decided that such a motion was unwarranted because

Officer Villarreal was acting as a community caretaker while interacting with Defendant. We explain.

**{15}** "An officer who is acting as a community caretaker does not violate the Fourth Amendment." *State v. Sheehan*, 2015-NMCA-021, ¶ 9, 344 P.3d 1064 (internal quotation marks and citation omitted). "Therefore, when police act as community caretakers, the existence of reasonable suspicion or grounds for probable cause are not appropriate inquiries." *Id.* (text only) (citation omitted). "When determining whether a warrantless search or seizure is reasonable on the basis of the community caretaker exception, we must measure the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen." *Id.* (internal quotation marks and citation omitted).

**{16}** Defendant agrees that the proper standard here for the community caretaker exception is the public servant doctrine—which "deals primarily with warrantless searches and seizures of automobiles." *Id.* ¶ 12 (internal quotation marks and citation omitted). Under the public servant doctrine, an officer "may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring." *Id.* (internal quotation marks and citation omitted). "This is an objective test to determine whether a vehicle stop is based on a reasonable concern for public safety." *Id.* (internal quotation marks and citation omitted).

**{17}** Here, Officer Villarreal was called to the scene by a concerned store clerk who stated Defendant had been parked for several hours and was in a slumped position. Officer Villarreal testified that this sort of call was unusual. When Officer Villarreal made contact with Defendant he immediately asked him, "What's going on?" Shortly after Defendant responded that he was waiting for his brother, Officer Villarreal asked about weapons to ensure his own safety during the encounter. *Cf. State v. Leyva*, 2011-NMSC-009, ¶ 26, 149 N.M. 435, 250 P.3d 861 ("Questions asked for purposes of ensuring officer safety during a stop generally are proper because when these measures are not too intrusive, the government's strong interest in officer safety outweighs the motorist's interest. Questions directed toward officer safety, therefore, do not bespeak a lack of diligence." (alterations, internal quotation marks, and citations omitted)); *Cf. State v. Boblick*, 2004-NMCA-078, ¶¶ 3, 13-15, 135 N.M. 754, 93 P.3d 775 (suppressing the evidence resulting from a protective frisk after a groggy defendant who was asked to step out of his vehicle, did not answer the subsequent questions of an officer, including whether the defendant had any weapons while conducting a safety check because the defendant's lack of response did not provide articulable safety concerns justifying the pat down). Here, unlike the facts in *Boblick*, Defendant admitted to possessing a weapon in the car and as a result, Officer Villarreal separated Defendant from the weapon by asking him to step out of the car. After Defendant exited the vehicle, Officer Villarreal told Defendant that he approached him because the store clerk had been concerned for him, and had requested the police check on him to ensure that he was not intoxicated or otherwise in distress. As such, Officer Villarreal articulated specific concerns for the safety of the Defendant. *See Schuster v. N.M. Dep't of Tax'n & Revenue*, 2012-NMSC-025, ¶ 28, 283 P.3d 288 (concluding that an officer's

question of whether the defendant was okay "can be viewed objectively as a question that arises out of concern for [the defendant's] welfare and not an intent to investigate").

**{18}** Based on the record before us we disagree with Defendant's contention that he was "seized . . . when the officers approached the car, woke him up, proceeded to ask accusatory questions, and ordered him out of his car." Examining the existing record, we turn first to Defendant's contention that Officer Villarreal and his partner parked their patrol cars behind his car and that both officers roused him from sleep. While there is no dispute that Officer Villarreal parked his patrol car behind Defendant's own parked vehicle, the video recording of the officer's encounter with Defendant appears to show a reasonable distance between the two vehicles, but the actual distance was not developed in the record. Moreover, although the record was not developed as to when the second officer arrived on the scene or whether he was present when Officer Villarreal knocked on the driver's side window and woke Defendant, the video establishes that only Officer Villarreal was present at the door to Defendant's car when the interaction began. Defendant additionally argues that Officer Villarreal ceased being a community caretaker when he ascertained that Defendant was not impaired, but rather tired. Although Officer Villarreal testified that he did not see signs of impairment in Defendant, he qualified that assessment by saying that he did not see the signs of alcohol impairment. He did not testify to any other form of impairment, or that he had reached the conclusion that Defendant was not suffering from a mental or medical emergency. Additionally, the record does not reflect when or if Officer Villarreal concluded that Defendant was not in need of assistance, at which point he would be acting outside his capacity as a community caretaker. *See Sheehan*, 2015-NMCA-021, ¶ 14 (stating that the public servant doctrine ends at the time the officer's concerns are alleviated).

**{19}** To the extent Defendant relies on *State v. Murry*, 2014-NMCA-021, 318 P.3d 180; *State v. Williams*, 2006-NMCA-062, 139 N.M. 578, 136 P.3d 579; and *State v. Jason L.*, 2000-NMSC-018, 129 N.M. 119, 2 P.3d 856 to argue that he was unreasonably seized during his interaction with Officer Villarreal, we find these cases inapplicable to our current analysis. Each case involved seizures conducted without reasonable suspicion. *See Murry*, 2014-NMCA-021, ¶ 35 (concluding the defendant was seized without reasonable suspicion); *Williams*, 2006-NMCA-062, ¶ 31 (concluding that the officer lacked reasonable suspicion to justify the stop at inception and therefore asking for identification was improper); *Jason L.*, 2000-NMSC-018, ¶¶ 17, 22 (concluding that the officers lacked reasonable suspicion to detain the defendant and ask the defendant if he was in possession of firearms). These cases do not analyze encounters under the community caretaker exception or public servant doctrine where reasonable suspicion is not required.

**{20}** Finally, Defendant argues that Officer Villarreal's request to see Defendant's license and Officer Villarreal running a warrants check are not authorized under the community caretaker exception. We disagree. "An officer may approach an individual, ask questions, and request identification without the encounter becoming a seizure." *State v. Granados*, 2023-NMSC-003, ¶ 53, 528 P.3d 599 (internal quotation marks and

citation omitted). Further, "whenever an officer is reasonably called upon to make contact with a driver (such as at border checkpoints and community caretaker functions), the officer has the right to know with whom he is talking and may check to see that the driver is both licensed and driving a car that is registered and insured." *State v. Reynolds*, 1995-NMSC-008, ¶ 21, 119 N.M. 383, 890 P.2d 1315. And "[a]fter obtaining the documents, the officer may lawfully run a computer check, directly or indirectly by contacting dispatch, in regard to the documents obtained. We have stated that this check may include a wants and warrants check." *State v. Rubio*, 2006-NMCA-067, ¶ 14, 139 N.M. 612, 136 P.3d 1022.

**{21}**  Because the facts in this record regarding Officer Villarreal's encounter with Defendant could support a conclusion by a reasonable attorney that Officer Villarreal acted within the scope of the community caretaker exception, we decline to address Defendant's argument that the seizure was not supported by reasonable suspicion or Defendant's argument that the evidence was not sufficiently attenuated from the seizure to be admissible. *See Sheehan*, 2015-NMCA-021, ¶ 9 ("Therefore, when police act as community caretakers, the existence of reasonable suspicion or grounds for probable cause are not appropriate inquiries." (text only) (citation omitted)).

**{22}**  We conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel. Defendant fails to establish that the record reflects that Officer Villarreal acted outside of the scope of the community caretaker exception, and as such cannot show the "facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *See Mosley*, 2014-NMCA-094, ¶ 20 (internal quotation marks and citation omitted). Because of this, we do not address Defendant's prejudice argument and reject Defendant's ineffective assistance of counsel claim. However, our conclusion does not preclude Defendant from pursuing habeas corpus proceedings if Defendant is able to adequately develop a record sufficient for review. *See State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289 (stating that when the record is inadequate for review, "[r]ather than remand the case to the trial court for further hearings, this Court has a general preference that such claims be brought and resolved through habeas corpus proceedings").

## II.    Sufficiency of the Evidence

**{23}**  Defendant argues that there was insufficient evidence to convict him of possession of methamphetamine because the State failed to show that he knew that methamphetamine was in his pocket or that the substance he possessed was methamphetamine. We disagree.

**{24}**  In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 988 P.2d 176. This test is whether "substantial evidence of either a direct or circumstantial nature exists to support

a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks and citation omitted). There is no basis for reversal in the mere existence of contrary evidence because the test merely asks whether a rational jury could have found the existence of the essential factors. *Id.*

**{25}**   The jury was instructed, in relevant part, that the State must prove beyond a reasonable doubt that "[D]efendant knew it was methamphetamine, or believed it to be methamphetamine, or believed it to be some drug or other substance the possession of which is regulated or prohibited by law." The jury was also instructed that "[a] person is in possession of methamphetamine when he knows it is on his person or in his possession and he exercises control over it." *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{26}**   "Knowledge, like intent, is personal in its nature and may not be susceptible of proof by direct evidence." *State v. Montoya*, 1966-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970. The State presented evidence that Defendant had exclusive possession of the methamphetamine. Defendant was alone in the vehicle when Officer Villarreal arrived and the methamphetamine was found in the front left pocket of Defendant's pants. Defendant exercised exclusive control and therefore knowledge of the presence of the drug may be inferred. *See State v. Howl*, 2016-NMCA-084, ¶ 31, 381 P.3d 684 (explaining that "[w]hen exclusive control is at issue, additional circumstances, including the conduct of the accused, are required" to establish knowledge); *State v. Tidey*, 2018-NMCA-014, ¶ 26, 409 P.3d 1019 (upholding the sufficiency of the evidence for a conviction of possession of a controlled substance where the arresting officer found the controlled substance in the defendant's pocket).

**{27}**   Our review shows sufficient evidence such that a reasonable jury could find that Defendant knew he was in possession of the substance and the substance he possessed was methamphetamine. Therefore, we hold there was sufficient evidence to convict Defendant of possession of methamphetamine.

**CONCLUSION**

**{28}**   For the forgoing reasons we affirm Defendant's conviction for possession of methamphetamine.

**{29}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**